IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,  Plaintiff,  v.  WAL-MART STORES EAST, LP,  Defendant | CIVIL ACTION NO. 1:23-cv-06902  **COMPLAINT**  JURY TRIAL DEMANDED |

NATURE OF THE ACTION

This is an action under Title I of the Americans with Disabilities Act of 1990 and Title I of the Civil Rights Act of 1991 to correct unlawful employment practices on the basis of disability and to provide appropriate relief to Charging Party Donna Livermore, who was adversely affected by such practices. Plaintiff U.S. Equal Employment Opportunity Commission (the "Commission") alleges that Defendant Wal-Mart Stores East, LP ("Walmart" or "Defendant") discriminated against and fired Livermore because of her disabilities. As alleged with greater particularity in the Statement of Claims, below, Defendant violated the ADA by subjecting Livermore, who has obvious hearing, speech, and cognitive impairments, to disability discrimination when it failed to continue her existing, effective reasonable accommodations at Store No. 5295 after management changed in or around January 2020. The Commission further alleges that Walmart denied Livermore equal benefits and privileges of employment by terminating her employment because of her disabilities.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345.

2. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C.§ 2000e-5(f)(1) and (3); and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

3. The employment practices alleged to be unlawful were committed within the jurisdiction of the United States District Court for the Eastern District of New York.

## PARTIES

4. Plaintiff, the United States Equal Employment Opportunity Commission (the "Commission"), is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. § 2000e-5(f)(1).

5. At all relevant times, Wal-Mart Stores East, LP, has continuously been and is now a limited partnership registered in Delaware that operates numerous facilities throughout the nation, including Walmart Supercenter No. 5295 in Farmingdale, New York. Wal-Mart Stores East has continuously been and is now doing business in the state of New York and the Village of Farmingdale, New York, and has continuously had at least fifteen (15) employees.

6. At all relevant times, Walmart has continuously been an employer in an industry affecting commerce under Section 101(5) and 101(7) of the ADA, 42 U.S.C. § 12111(5), (7).

7. At all relevant times, Walmart has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

## ADMINISTRATIVE PROCEDURES

7. More than thirty days prior to the institution of this lawsuit, Donna Livermore filed a charge with the Commission alleging violations of the ADA by Walmart.

8. The Commission investigated Livermore's charge of discrimination.

9. On August 10, 2022, the Commission issued a Letter of Determination to Walmart finding reasonable cause to believe that Walmart violated the ADA and inviting Walmart to join with the Commission in informal methods of conciliation to endeavor to eliminate the unlawful employment practices and provide appropriate relief.

10. The Commission engaged in communications with Walmart to provide Walmart the opportunity to remedy the discriminatory practices alleged in the Letter of Determination.

11. On July 14, 2023, the Commission issued to Walmart a Notice of Failure of Conciliation advising Walmart that the Commission was unable to secure from Walmart a conciliation agreement acceptable to the Commission.

12. All conditions precedent to the institution of this lawsuit have been fulfilled.

## STATEMENT OF CLAIMS

13. Since at least January 2020, Defendant Walmart has engaged in unlawful employment practices at its Farmingdale, New York site, in violation of in violation of Section 102(a) and (b)(1) of Title I of the ADA, 42 U.S.C. §§ 12112(a) and (b)(1).

14. Livermore is a qualified individual with disabilities under Section 3 and 101(8) of the ADA, 42 U.S.C. § 12102 and 12111(8). She has hearing, speech, and cognitive impairments

that substantially limit her in the major life activities of hearing, communicating, learning, and interacting with others.

15. Livermore's hearing, speech, and cognitive impairments are obvious.

## LIVERMORE IS A QUALIFIED INDIVIDUAL WITH DISABILITIES

16. At all relevant times, Livermore was qualified to perform the essential functions of her job as a Customer Availability Process Team Associate, with or without a reasonable accommodation.

17. In or around September 2017, Walmart hired Livermore as a Customer Availability Process Team Associate ("Stocker") at Walmart Store No. 5295 in Farmingdale, New York.

18. As a Stocker, Livermore's responsibilities included stocking merchandise on the sales floor and organizing merchandise in the back room of the store.

19. Livermore's responsibilities as a Stocker did not change between September 2017 and her termination on January 16, 2021.

20. On April 21, 2018, April 27, 2019, and March 18, 2020, Livermore received ratings of "Valued Performance" on her yearly review.

21. On April 21, 2018, Livermore's Yearly Review included the following comment: "Donna need follow her routine."

22. On April 27, 2019, Livermore's Yearly Review included the following comments: "Donna is very dedicated to her position[]" and "Donna communicate well with her Dm."

23. Livermore currently works as a Team Associate at Walmart Store No. 2583 in Uniondale, New York.

24. On information and belief, Livermore performs the same duties at the Uniondale, New York location that she performed in Walmart's Farmingdale, New York store.

25. Livermore was therefore a qualified individual with respect to the Stocker position at Store No. 5295 under Section 101(8) of the ADA, 42 U.S.C § 12111(8).

### WALMART WAS AWARE OF CHARGING PARTY'S OBVIOUS DISABILITIES AND NEED FOR ACCOMMODATION SINCE SEPTEMBER 2017

26. When Livermore interviewed for the Stocker position in or around September 2017 ("September 2017 Interview"), Livermore's daughter accompanied her to the interview with Walmart.

27. At the September 2017 Interview, Livermore's daughter explained to Walmart that Livermore had hearing, speech, and cognitive impairments.

28. At the September 2017 Interview, Livermore's daughter explained to Walmart that Livermore was not computer literate and that only she, not Livermore, could sign employment-related paperwork on Livermore's behalf because of her cognitive impairments.

29. During the September 2017 Interview, Charging Party's daughter explained to Walmart that Livermore was hearing impaired and explained that Livermore could understand face-to-face, one-on-one conversations.

30. Livermore does not understand American Sign Language and relies primarily on lip reading to understand verbal communications.

31. Livermore speaks with an obvious impediment.

32. Livermore's cognitive impairment necessitates that she receive simple, direct instructions and that she performs her tasks according to a routine.

33. After Walmart hired Livermore, Livermore's daughter came in to Walmart to assist Livermore in completing computerized trainings.

34. On information and belief, Walmart's store human resources personnel and managers observed Livermore's daughter assisting Livermore in completing computerized trainings.

35. Throughout 2017, 2018, and 2019, Walmart store managers accommodated Livermore's speech, hearing, and cognitive impairments by, among other things, communicating her assignments one-on-one and face-to-face and allowing Livermore to perform her job tasks according to a set routine.

### WALMART'S NEW MANAGERS DISCONTINUED LIVERMORE'S LONGSTANDING ACCOMMODATIONS

36. In or around January 2020, Walmart installed new managers at Store 5295.

37. Walmart failed to communicate the reasonable accommodations that had allowed Livermore to perform her job to her new managers.

38. Livermore's new managers communicated Charging Party's assignments during group huddle meetings where participants wore masks because of the COVID-19 pandemic.

39. Livermore's new managers did not allow her to perform her tasks according to a consistent routine, and instead changed her tasks every day.

### WALMART TERMINATED CHARGING PARTY'S EMPLOYMENT BECAUSE IT FAILED TO ACCOMMODATE HER KNOWN, OBVIOUS DISABILITIES

40. On January 16, 2021, Walmart terminated Livermore's employment after she resisted an Overnight Coach's attempt to redirect her work.

41. On January 16, 2021, Livermore was loading cardboard boxes from a cart into a baling machine, which she understood was part of her daily routine.

42. The Overnight Coach and Charging Party's Team Lead approached her to inform her she should be working on a different task. The Overnight Coach grabbed her cart and Livermore pulled back on the cart.

43. The Overnight Coach and Team Lead departed and Livermore finished unloading the contents of her cart into the baling machine.

44. While walking away, the Overnight Coach told the Team Lead to bring Livermore into the office for insubordination.

45. After she finished unloading the contents of her cart and returned to the store floor, a manager walked Livermore to a meeting.

46. On the way to the meeting, Livermore explained to the manager that she had a routine, and she could not perform the same work as other employees. Livermore further explained to the manager that she had worked the same routine for her previous managers, and it had never been a problem.

47. Walmart sent Livermore home early on January 16, 2021.

48. Livermore did not understand that she had been terminated on January 16, 2021.

49. On January 18, 2021, Livermore went back to work at Walmart but was unable to sign in.

50. On January 18, 2021, Livermore and her daughter returned to Walmart and met with a People Lead and a different manager in Walmart's store office.

51. During the January 18, 2021 meeting, Walmart's People Lead informed Livermore and her daughter that Walmart did not know that Livermore was disabled and asked for supporting documentation.

52. Livermore's daughter expressed surprise and stated that Livermore was obviously disabled.

53. Walmart asked Livermore's daughter to return with medical documentation proving Livermore's disability.

54. Livermore's daughter returned to Walmart on or around January 28, 2021, with medical documentation.

55. Walmart refused to accept the medical documentation and refused to reconsider its decision to terminate Livermore's employment.

56. By discontinuing the effective accommodations that it had provided to Livermore prior to January 2020, Walmart violated its obligation under the ADA to reasonably accommodate her disabilities.

57. By failing to discuss any potential accommodation with Livermore for her obvious disabilities, Walmart violated its obligations under the ADA to engage in an interactive process to reasonably accommodate Livermore's disabilities.

58. By terminating Livermore's employment for performance issues that occurred because it failed to reasonably accommodate her disabilities, Walmart deprived Livermore of equal employment opportunities and otherwise adversely affected her status as an employee because of her disabilities.

59. The unlawful employment practices complained of above were intentional.

60. The unlawful employment practices complained of above were done with reckless indifference to Livermore's federally protected rights.

**PRAYER FOR RELIEF**

Wherefore, the Commission respectfully requests that this Court:

    A.      Grant a permanent injunction enjoining Defendant, its officers, successors, assigns, and all persons in active concert or participation with it, from engaging in disability discrimination, and from engaging in any employment practice that discriminates on the basis of disability.

    B.      Order Defendant to institute and carry out policies, practices, and programs that provide equal employment opportunities and reasonable accommodations for qualified individuals with disabilities and that eradicate the effects of its past and present unlawful employment practices.

    C.      Order Defendant to make Livermore whole by providing appropriate back pay with prejudgment interest, in amounts to be determined at trial, and other affirmative relief necessary to eradicate the effects of its unlawful employment practices, including instatement or reinstatement of Livermore.

    D.      Order Defendant to make Livermore whole by providing compensation for past and future pecuniary losses resulting from the unlawful employment practices described above, in amounts to be determined at trial.

    E.      Order Defendant to make Livermore whole by providing compensation for past and future non-pecuniary losses resulting from the unlawful employment practices described above, including emotional pain, suffering, inconvenience, mental anguish, and other nonpecuniary losses, in amounts to be determined at trial.

    F.      Order Defendant to pay Livermore punitive damages for the malicious and/or reckless conduct described above, in amounts to be determined at trial.

  G. Grant such further relief as the Court deems necessary and proper to the public interest.

  H. Award the Commission its costs of this action.

## JURY TRIAL DEMAND

The Commission requests a jury trial on all questions of fact raised by this Complaint that are triable to a jury.

Dated: September 18, 2023

        GWENDOLYN YOUNG REAMS
        Acting General Counsel

        CHRISTOPHER LAGE
        Deputy General Counsel

        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
        131 M Street, N.E.
        Washington D.C. 20507

        JEFFREY BURSTEIN
        Regional Attorney
        jeffrey.burstein@eeoc.gov

        NORA E. CURTIN
        Assistant Regional Attorney
        nora.curtin@eeoc.gov

        /s/Cara B. Chomski
        CARA B. CHOMSKI
        Trial Attorney
        cara.chomski@eeoc.gov

        U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION
        New York District Office
        33 Whitehall Street, 5th Floor
        New York, NY 10004-2112
        (929) 506-5278 (telephone)
        (212) 336-3623 (fax)