UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
U.S. EQUAL EMPLOYMENT
OPPORTUNITY COMMISSION,

                     Plaintiff,             **ORDER**
       -against-                     CV 23-6902 (GRB)(AYS)

WALMART INC.,

                     Defendant.
----------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

      This is a case brought by the United States Equal Employment Opportunity Commission (the "EEOC" or the "Agency") alleging that Defendant Walmart Inc. ("Walmart" or "Defendant") violated the Americans with Disabilities Act (the "ADA"). The Agency brings this case to vindicate the rights of a single person – referred to by the EEOC as the "Charging Party." The identity of the Charging Party is neither confidential nor sought to be withheld by the EEOC. She is an individual named Donna Livermore (hereinafter "Livermore" or the "Charging Party"). Livermore worked for Defendant at one of its stores, and is currently employed at another Walmart location. Presently before the Court is the question of whether the EEOC should be required to collaborate with Livermore to obtain her signature on HIPAA-compliant authorizations allowing Defendant to obtain Livermore's records.

BACKGROUND

      This case was commenced on September 18, 2023. (Docket Entry, "DE" [1].) Defendant filed its answer on November 17, 2023. (DE [8].) In December of 2023, the EEOC sought permission to file a motion to strike certain affirmative defenses. On January 2, 2024, the District Court scheduled a pre-motion conference, to be held on February 27, 2024, with respect to the

1

Agency's request. That conference became unnecessary when counsel agreed to allow Plaintiff to file an amended complaint and for Defendant to remove four of its previously asserted affirmative defenses. (Order of Brown, J., dated Jan. 26, 2024.) On January 26, 2024, the EEOC filed its Amended Complaint, which is the presently operative pleading. (DE [20].) Like the initial Complaint, the Amended Complaint alleges that Defendant violated the ADA in failing to accommodate Livermore's medical needs. The EEOC also alleges that Livermore was terminated on account of her disabilities. Details regarding the alleged violations are provided in the pleading. Briefly stated, the Agency alleges that Livermore is a person with hearing, speech and cognitive impairments that substantially limit her in major life activities. Walmart is alleged to have had knowledge of these various disabilities. It is also alleged that Walmart accommodated Livermore until a 2020 change in management at the store where Livermore was employed. While Livermore is currently employed at a different Walmart store, she is alleged to have been terminated from her prior position as a result of her disabilities. (DE [20].)

This Court held an initial conference on January 9, 2024. While that conference was held prior to the filing of the Amended Complaint, that timing has no bearing on the issue raised herein, which goes to the scope of discovery, and this Court's discretionary oversight thereof. Among other issues discussed at the initial conference was the production of Livermore's medical records. In cases alleging a violation of the ADA, or indeed, any case where the medical condition of a party is at issue, the exchange of medical records is usually a matter upon which counsel confer and reach ready agreement. Thus, lawyers familiar with litigation routinely agree to provide their adversary with fully executed medical records authorizations so that discovery can proceed in the most efficient manner. Occasionally, issues are raised regarding the proper

scope of authorizations. Those issues are addressed at the initial conference so that discovery can proceed with neither hesitation nor unnecessary motion practice.

Not so here. In this case, counsel for the EEOC refused to move discovery along by asking Livermore to execute any type of authorization for medical records. Instead – despite recognizing that Livermore's medical records were undoubtedly within the scope of discovery – the Agency took the position that it would gather what it deemed to be relevant medical records. It proposed to review such records and provide whatever records it wished to Defendant. When advised that this was not the way in which discovery in ADA cases usually proceeds, and that the Agency's approach deprives Defendant of the ability to properly litigate the issue of whether a party is disabled, the Agency held fast to its position.

This Court noted the novelty of the Agency's approach and inquired whether there was something about a case where the EEOC is Plaintiff that required divergence from the usual discovery protocol followed before this Court and in this District. The EEOC was given leave to submit a letter explaining any authority for its legal position. That letter has been submitted, as has Defendant's opposition thereto.

<u>DISCUSSION</u>

I.    <u>Legal Principles</u>

The scope of discovery is set forth in Rule 26 of the Federal Rules of Civil Procedure (the "Rules").  It provides that:

> Parties may obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Fed. R. Civ. P. 26(b)(1).

This Court has broad discretion to oversee discovery. See Cruden v. Bank of New York, 957 F.2d 961, 972 (2d Cir. 1992). When exercising its discretion, the Court is guided by, inter alia, Rule 26 and Rule 1. The latter provides that the Rules shall be "construed, administered, and employed by the court and the parties to ensure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

II.    This Court's Discovery Protocols

This Court endeavors to conduct discovery in accord with the Federal Rules by, inter alia, requiring counsel to prepare a joint letter (the "Joint Letter") prior to the initial conference. Among other matters, the Joint Letter requires counsel to confer and identify paper discovery that can be exchanged on a voluntary basis. This allows for an early exchange of first wave paper discovery without the formality of Rule 34 Requests or Rule 33 Interrogatories, and the inevitable objections thereto. It is meant to encompass what all reasonable litigators can agree is a class of obviously discoverable information. Such an early exchange of information can put parties in a position where they can discuss meaningful settlement and/or serve targeted requests as part of a second phase of discovery. The voluntary exchange of authorizations is so commonplace that the Joint Letter requires counsel to set forth a date for execution of HIPAA-compliant authorizations. This is not surprising since there is no question but that a "plaintiff waives his right to privacy in his medical records when he puts his medical condition at issue in a lawsuit." Vargas v. United States, 401 F. Supp.3d 346, 347 (E.D.N.Y. 2018).[1]

---

[1] Where a plaintiff's medical condition is not at issue, counsel respond to this portion of the Joint Letter by simply stating that it is not applicable.

III.     The Joint Letter in this Case and the Initial Conference

      The Joint Letter submitted in this matter stated vaguely that the EEOC will "work with the Charging Party to provide HIPAA-compliant authorizations to Defendant consistent with its obligations" under the Rules. (DE [15].) The Agency further stated that it would be for Defendant to identify the providers from whom records are sought, and that the EEOC would not consent to release Livermore's entire medical file beyond those "relevant to the claims, defenses, and asserted damages in this action. " (Id.) For its part, Walmart expressed its failure to understand why the EEOC was delaying the action by refusing to provide records authorizations, but offered to confer with the Agency regarding the scope of any releases.

      At the initial conference, the Agency made clear what it meant by its response to the Joint Letter. It confirmed its refusal to ask the Charging Party to execute authorizations. It further stated that after service of formal document requests, it would obtain medical records and then produce those records which it deemed to be within the scope of discovery. As noted, the Agency was given the opportunity to explain the legal basis for its approach. The Court has reviewed the Agency's submission and, for the reasons set forth below, rejects its approach to discovery.

IV.     Disposition

      The EEOC did not bring a case to this Court's attention requiring that it delay this matter by proceeding in the manner that it proposes. Instead, the Agency relies entirely on cases decided outside of this Circuit, relegating relevant Eastern District caselaw to a footnote. (DE [17] at n.2 (noting that "[c]ourts in the Second Circuit are not aligned" with the Fourth Circuit caselaw upon which the EEOC relies).) Upon this Court's review of the caselaw that does apply, and in its discretion to oversee discovery in the most efficient manner, this Court holds that the most

efficient way to bring this matter to trial or other disposition is to require that EEOC work with the Charging Party to provide fully executed HIPAA-compliant authorizations to Defendant. Counsel are directed to confer, without the need for formal discovery requests, as to the precise identity of providers to whom such authorizations will be directed. The Agency is clearly in the best position to identify those providers. It must therefore, in the first instance, identify all medical providers who have treated or diagnosed any of Livermore's speech, hearing or cognitive difficulties during the time that she has been employed by Walmart.

The Court is well aware that Livermore is not the Plaintiff here – she is the Charging Party. The Agency is not, however, a stranger to Livermore. It is obviously in contact with her and in the best position to work with her to move her case forward. As an agency bringing a lawsuit on behalf of a disabled individual, the EEOC should be interested in following the most expedient discovery path. Instead of delaying discovery by taking an unsupported legal position, the Agency should be doing all in its power to bring a disabled individual speedy relief.

<u>CONCLUSION</u>

In conclusion and in accord with its discretion, this Court hereby orders the EEOC to work with Livermore and to have her execute HIPAA-compliant authorizations for the release of all records of diagnosis and/or treatment for any medical condition as to which Plaintiff claims Livermore is disabled. Those records shall cover the period of Livermore's employment to date. <u>Gordon v. John T. Mather Mem. Hosp.</u>, No. 17 CV 7168, 2021 WL 9183822 *2 (E.D.N.Y. Aug. 4, 2021).[2]

---

[2]     Counsel have indicated that they intend to enter into a protective order regarding medical records. They are encouraged to review this Court's rules with respect to such an agreement so that they may enter into an appropriate agreement in the most expedient manner.

**SO ORDERED:**

Dated: Central Islip, New York
        January 31, 2024

                                             /s/ Anne Y. Shields
                                             ANNE Y. SHIELDS
                                             United States Magistrate Judge